# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

MICHAEL J. COOK, as Trustee of the
Minnesota and North Dakota Bricklayers
and Allied Craftworkers Pension Fund, <u>et. al.</u>,

       Plaintiffs,

v.     **MEMORANDUM OF LAW & ORDER**
       Civil File No. 12-2161 (MJD/JJG)

SHOTLEY CONSTRUCTION, INC.,
a Minnesota corporation, and
ERIC M. SPANGRUD,

       Defendants.

Andrew E. Staab, Felhaber Larson, Counsel for Plaintiffs.

No appearance on behalf of Defendants.

## I.     INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Entry of Judgment.

[Docket No. 28]

## II.    BACKGROUND

### A.     Factual Background

1

The factual background of this dispute is set forth in detail in this Court's Findings of Fact, Conclusions of Law and Order filed May 31, 2013. [Docket No. 15]. Generally, Plaintiffs are Trustees and fiduciaries of the Minnesota and North Dakota Bricklayers and Allied Craftworkers Pension Fund, Health Fund, Vacation Fund, and Journeyman and Apprentice Training Trust Fund ("Funds"), multiemployer plans governed by ERISA. Defendant Shotley Construction, Inc. ("Shotley") is a Minnesota corporation, and Defendant Eric M. Spangrud is the president and a stockholder of Shotley. Shotley and Spangrud were bound by the terms of the collective bargaining agreement ("CBA") between the Associated General Contractors of Minnesota, the Minnesota Concrete and Masonry Contractors Association, the Bricklayers and Allied Craftworkers Local Union 1 Minnesota/North Dakota, and Independent Employers. Under the CBA, Defendants were required to make contributions on behalf of covered employees. Defendants were also required to submit a fringe benefit contribution Report Form and pay fringe benefit contributions for each hour worked by all employees covered by the CBA during the previous month.

Defendants did not submit Report Forms or pay the contributions for work performed in April 2012 or May 2012. Plaintiffs made written demand on

Shotley on June 12, 2012, and June 26, 2012, but Shotley did not comply.  On July 23, 2012, Shotley submitted Report Forms and contributions for May 2012, but the payment did not include liquidated damages, so Plaintiffs returned the payment.  On August 2, 2012, Shotley submitted Report Forms and payment for the June 2012 work, but did not include liquidated damages so Plaintiffs returned the payment.  Shotley did not submit Report Forms or pay contributions for work performed in July 2012 or any month thereafter.  In their June 26, 2012 demand letter, Plaintiffs had also demanded a fringe benefit audit, but Shotley failed to supply the requested payroll records, so the accuracy of the Report Forms that were submitted has not been verified.

    B.    **Procedural History**

Plaintiffs filed a Complaint against Shotley and Spangrud in this Court on September 4, 2012.  The Complaint contains no individual counts, but generally alleges Defendants' delinquencies and requests that Defendants submit the documents necessary for an audit; post a $50,000 bond; and pay all unpaid fringe benefit contributions owing and coming due during the pendency of the action, liquidated damages, and reasonable attorney fees.  Shotley and Spangrud were served with the Summons and Complaint on September 6, 2012.  [Docket No. 3]  They failed to plead or otherwise appear.  On October 2, 2012, the Clerk entered

default against both Defendants.  [Docket No. 6]  Plaintiffs then moved for default judgment.

On May 31, 2013, after a hearing, this Court entered default judgment against Defendants and granted Plaintiffs' request for a fringe benefit audit. [Docket No. 15]  Specifically, the Court ordered that, by June 14, 2013, Defendants were required to furnish Plaintiffs' agent with all employment and payroll records and other relevant information necessary for a fringe benefit audit, cooperate fully in the fringe benefit order, and post a surety bond in the face amount of $50,000.

On October 16, 2013, Plaintiffs filed a Motion for Holding Defendants in Civil Contempt.  [Docket No. 16]  Plaintiffs asserted that although Defendants did mail a letter to Plaintiffs, Defendants had not otherwise complied with the Court's Order, and Plaintiffs requested that the Court impose a fine on Shotley and Spangrud and imprison Spangrud for civil contempt.

On November 5, 2013, this Court issued an Order to Show Cause that ordered Spangrud and Shotley to personally appear for a contempt hearing before this Court on January 10, 2014.  [Docket No. 21]  Spangrud did appear for the January 10 hearing.  [Docket No. 25]  The parties agreed to work together to

attempt to resolve their issues.  [Id.]  On February 3, 2014, Plaintiffs informed the Court that Defendants had provided sufficient material for the audit to progress, and the continued show cause hearing was cancelled.  [Docket Nos. 26-27]

On March 3, 2014, Plaintiffs filed the current Motion for Entry of Judgment.  Defendants were served with copies of the motion and accompanying documents by first class mail.  [Docket No. 30]  Defendants have not responded.

## III.   DISCUSSION

Plaintiffs represent that the fringe benefit audit revealed no unpaid fringe benefit contributions and liquidated damages due to Plaintiffs.  (Staab Aff. ¶ 3.)  However, Plaintiffs request an award of $17,127.81, consisting of $15,472.50 in attorneys' fees, $861.81 in costs, and $793.50 in audit fees.  (Id. ¶¶ 4-6; Staab Aff., Exs. A-B.)

In the Court's May 31, 2013 Order, the Court held that "Defendants are liable for all contributions owing through the date of the fringe benefit audit, plus liquidated damages of ten percent (10%) of the unpaid contributions, and interest on the unpaid contributions, together with reasonable attorney fees and costs of this action."  (May 13 Order at 8.)  The Court further ordered:

5

> That upon completion of the fringe benefit audit as ordered herein, Plaintiffs shall forthwith serve and file an Affidavit of the fringe benefit auditor setting forth the amount of the unpaid contributions Defendants owe Plaintiffs through the date of the audit, liquidated damages owing, and interest on the unpaid contributions, and an Affidavit of Plaintiffs' counsel setting forth the amount of the reasonable attorney fees and costs of this action.  Defendants shall be allowed ten days after service and filing of the Affidavits to serve and file any objections to the amounts stated in the Affidavits.  Upon the expiration of the ten day period, the Court will order Judgment against the Defendants, jointly and severally, for a sum certain as determined by the Court, without further hearing.

(Id. at 9.)

> Pursuant to the CBA, Article 22(7)(f),
>
> All Employers agree to promptly furnish to the Trustees and the Union, or their authorized agents, on demand, all necessary employment and payroll records relating to its Employees and persons performing work covered by this Agreement, including any other relevant information that may be required in connection with the administration of the Trust Funds.  The Trustees or their authorized agents may examine all Employer records whenever such examination is deemed necessary in connection with the proper administration of the Trust Funds.

The record has already established that Defendants failed to comply with Plaintiffs' demand for the employment and payroll records necessary for the audit.  The CBA further provides:

> If an Employer fails or refuses to furnish the above-referenced records to the Funds' Board of Trustees, then the Union or their authorized agents upon demand, or otherwise refuses to afford the

6

>   Funds' Trustees or their authorized agents reasonable opportunity to examine the records in accordance with generally accepted auditing procedures, then the Trust Funds may enforce such rights by legal action.  If the Trust Funds enforce their rights by legal action, then the delinquent Employer agrees to pay all attorney fees, service fees, filing fees, court reporter fees and other legal costs and disbursements as well as the auditing fees and costs incurred in conducting such audit.

(Id.)

In this case, Plaintiffs were forced to sue Defendants and obtain a default judgment and an order to show cause from this Court in order to force Defendants to comply with their obligation to cooperate with the audit. Therefore, although, ultimately, the audit revealed that Defendants owe no more contributions to Plaintiffs, Plaintiffs are entitled to their reasonable attorneys' fees, costs, and audit fees incurred in pursuing this action.

The Court now turns to the reasonableness of the requested fees and costs. "Just what is a reasonable attorneys' fee is a matter peculiarly within the district court's discretion." Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 931 (8th Cir. 1984).  Defendants have not filed any response to Plaintiffs' request for fees and costs.  However, the Court has exercised its own obligation to independently review the requested attorneys' fees and costs to ensure that they are accurate, appropriate, and reasonable.

>   Overall, the Court considers
>
>   (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983). The Court need not "examine exhaustively and explicitly, in every case, all of the factors that are relevant to the amount of a fee award." Griffin v. Jim Jamison, Inc., 188 F.3d 996, 998 (8th Cir.1999). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005) (citation omitted).

First, the Court addresses the reasonableness of the rates charged. The attorneys charged $230 per hour and the paralegal charged $110 per hour. The Court concludes that these hourly rates are reasonable based on the local market, the type of lawsuit, and the professionals' experience.

8

Second, the Court addresses the amount of hours expended on this lawsuit. Here, Plaintiffs' counsel billed for 76.90 hours of work on this matter. The Court frequently presides over ERISA fringe benefit fund default cases and is familiar with the amount of hours generally expended in these types of lawsuits. This case warranted more hours than the average case because Plaintiffs were required to bring a motion for contempt in order to obtain Defendants' compliance with the default Order requiring an audit. However, the amount of hours spent by Plaintiffs' counsel is significantly higher than in the average ERISA fringe benefit fund default cases before this Court, where 15-25 hours is the norm. Counsel for the fringe benefit funds in these cases routinely bring almost identical lawsuits based on identical or very similar collective bargaining agreements on a routine basis. The case law is clear that, barring an unusual factual or legal issue which was not in play in this case, Plaintiffs are entitled to audit the defendant employer and, subsequently, collect unpaid benefits, interest, and liquidated damages due and owing. Therefore, it is not reasonable to spend 76.9 hours on a case such as this. For example, it is unreasonable for an attorney to spend more than one hour in a conference with another attorney regarding the strategy to file a motion to compel an audit and to

then spend 11.6 hours researching, drafting, and revising the motion to compel the audit and accompanying affidavits, memoranda, and other paperwork. (See Staab Aff., Ex. A, Olson entries 10/4/12-10/19/2012.) On top of the excessive hours spent on this task, another attorney spent more than 10 hours reviewing and revising these same documents and drafting more accompanying affidavits. (See Staab Aff., Ex. A, Haugrud entries 10/22/2012-4/17/2013.) The hours requested by Plaintiffs are far greater than the hours reasonably expended in dozens of other similar cases. The Court has carefully reviewed the billing records in this case; based on that review and the Court's familiarity with the record in this case as well as the reasonable hours expended in many other similar cases, the Court will reduce the overall attorneys' fees requested by 1/3 to $10,315.

The Court concludes that the costs requested, $861.81, are reasonable and reimbursable. Although, in the Eighth Circuit, computerized research costs cannot be taxed under a fee-shifting statute, such costs are reimbursable under a contractual agreement between the parties, like the CBA in this case. See In re UnitedHealth Grp. Inc. S'holder Derivative Litig., 631 F.3d 913, 918 (8th Cir. 2011) (holding that, although online research costs are not reimbursable under

fee-shifting statutes, they are reimbursable under negotiated settlement agreement); BP Group, Inc. v. Capital Wings Airlines, Inc., Civil No. 09–2040 (JRT/JSM), 2011 WL 4396938, at *4 (D. Minn. Sept. 21, 2011) (holding that, under UnitedHealth Group, computerized research costs are reimbursable under "the parties' pre-conflict contractual agreement to award reasonable attorney fees and costs to the prevailing party in any dispute under the agreement").

Finally, Plaintiffs aver that they have incurred an audit fee of $793.50 in this matter. This amount appears reasonable.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Plaintiffs' Motion for Entry of Judgment [Docket No. 28] is **GRANTED** as follows: Judgment is entered in favor of Plaintiffs and against Defendants Shotley Construction, Inc. and Eric M. Spangrud in the amount of $11,970.31, consisting of $10,315 in attorneys' fees, $861.81 in costs, and $793.50 in audit fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 26, 2014           s/ Michael J. Davis
                                 Michael J. Davis
                                 Chief Judge
                                 United States District Court

11